**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DR. NAVIN BAROT** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **CIVIL NO.: 1:14cv15-HSO-RHW** |
| | § | |
| **R.F. LAFFERTY & CO., INC., APEX** | § | **DEFENDANTS** |
| **CLEARING CORPORATION, f/k/a** | § | |
| **RIDGE CLEARING &** | § | |
| **OUTSOURCING SOLUTIONS, INC.,** | § | |
| **TODD SHERMAN, and JOHN DOES** | § | |
| **1-5** | § | |

<u>**MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS AND COMPELLING ARBITRATION**</u>

BEFORE THE COURT is the Motion to Dismiss this Action and Compel Arbitration [13] filed by Defendants R.F. Lafferty & Co., Inc., and Todd Sherman. Defendant Apex Clearing Corporation has formally adopted and joined [17] the Motion.  Plaintiff Dr. Navon Barot has filed a Response [19], and Defendants have each filed a Rebuttal [23] [24].  Having considered the parties' submissions, the record, and relevant legal authorities, the Court finds that the Motion should be granted, Plaintiff's claims should be submitted to arbitration, and this case should be dismissed.

## I. BACKGROUND

In September 2010, Plaintiff Dr. Navin Barot ("Dr. Barot") entered into a Customer Account Agreement [1-2] and Margin Agreement [1-2] (collectively, "the Agreement") with Defendants R.F. Lafferty & Co., Inc. ("Lafferty"), and Apex

Clearing Corporation f/k/a Ridge Clearing & Outsourcing Solutions, Inc. ("Apex").[1]

Compl. 1, 4 [1].  Defendant Todd Sherman ("Sherman")[2] "was assigned as [Dr.]

Barot's personal broker and contact person with Lafferty and [Apex]."  *Id*. at 4.

Pursuant to the Agreement, Defendants provided investment services to Dr. Barot.

*Id*.  Defendants allegedly invested Dr. Barot's funds in "suspect, high risk

securities" and engaged in "unauthorized trades . . . at an excessively high volume"

all in an effort to "churn [Dr.] Barot's account resulting in large transactional fees

for" Defendants and to Dr. Barot's "detriment and cost . . . ."  *Id*.  Dr. Barot asserts

that he suffered personal losses in excess of $250,000.00, and he advances claims for

breach of fiduciary duty, violations of the Securities and Exchange Act of 1934, 15

U.S.C. § 78j ("the Securities Act"), fraud, misrepresentation, negligence, breach of

contract, breach of the duty of good faith and fair dealing, conversion,

embezzlement, conspiracy, and negligent and intentional infliction of emotional

distress.   *Id*. at 5-10. Dr. Barot also requests an accounting.  *Id*. at 6.

Lafferty seeks an Order dismissing the Complaint and requiring Dr. Barot to

submit his claims to arbitration.  Mot. to Dismiss and Compel Arbitration 2-5 [14].

Lafferty submits the Affidavit of Henry Hackel, its Chief Executive Officer, and

cites the arbitration provision contained in the Customer Account Agreement

pursuant to which "[a]ll parties to [the A]greement [gave] up the right to sue each

---

[1] The Agreement was preceded by Dr. Barot's completion and submission of a New Account Application [13-1]. In that Application, Dr. Barot listed his employer as "Susquehanna Health Medical Group" and identified his position as being a "Physician."

[2] Occasionally, the Court will refer to Lafferty, Apex, and Sherman collectively as "Defendants."

other in court, including the right to trial by jury[] . . . ." *Id.* at 3; *see also* Customer

Account Agreement ¶ 9(a), attached as Ex. "1" to Compl. [1-2].  The provision states

that

> I agree that any and all controversies that may arise between or
> among me, you, and/or your clearing firm, or any of their respective
> officers, directors, employees, agents, subsidiaries, or affiliates,
> including, but not limited to, those arising out of or relating to
> transactions contemplated hereby, the account established hereunder,
> any activity or claim related to the Account, or the construction,
> performance, or breach of this or any other agreement between or
> among us, whether entered into prior, on or subsequent to the date
> hereof, shall be determined by arbitration.

*Id.* at 3-4; *see also* Customer Account Agreement ¶ 9, attached as Ex. "1" to the

Compl. [1-2] and Ex. "A" to Aff. of Henry Hackel [13-1].[3]  Lafferty reasons that

arbitration of Dr. Barot's claims is required because Dr. Barot agreed to arbitrate

all disputes between he, Lafferty, and Apex, Dr. Barot's claims fall within the scope

of the arbitration provision, and there are no legal constraints preventing

arbitration of Dr. Barot's claims.  *Id.* at 7-13 [14].

Dr. Barot responds that the arbitration provision is unconscionable under

Mississippi law.[4]  Mem. in Supp. of Resp. in Opp'n to Mot. to Compel Arbitration 3-4

[20] ("Resp. in Opp'n").  Dr. Barot contends the Agreement was "unquestionably a

pre-printed standard form . . . not amenable to bargaining[,]" and amounted to a

contract of adhesion which should be construed against Lafferty.  *Id.* at 5.  Dr. Barot

---

[3] While the Court cites the arbitration provision set forth in paragraph 9 of the Customer
Account Agreement, the Margin Agreement contains a nearly identical arbitration provision in
paragraph 11.  *See* Margin Agreement ¶ 11 [1-2].

[4] As discussed *infra* at page 7, Lafferty cites the Agreement's choice of law provision which
provides that the Agreement shall be governed by the law of the State of New York.  Neither Dr.
Barot nor Apex address the choice of law provision and both appear to assume that Mississippi law
applies.

also contends that a provision in the Agreement allowing Lafferty to amend the Agreement upon written notice renders the arbitration provision unenforceable because it is illusory and "lacks mutuality." *Id.* at 6-9.  Dr. Barot further maintains that Apex did not assert arbitration as an affirmative defense and has thus waived the right to seek arbitration, and Apex's waiver should be imputed to Lafferty. *Id.*

## II. DISCUSSION

### A.   Legal Standard

The Federal Arbitration Act, 9 U.S.C. §§ 1 to 16 ("FAA"), provides that a written agreement to arbitrate contained in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage" of the FAA.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Section 4 provides for entry of an order compelling arbitration where one party has failed, neglected, or refused to comply with an arbitration agreement.  Under section 4,

> if a party to an agreement refuses to arbitrate, the opposing party may bring an action to compel arbitration, and after hearing the parties[,] the court "being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," shall direct the parties to arbitrate. Further, § 4 declares that "[i]f the making of the arbitration agreement or the failure . . . to perform the same be in issue, the court shall proceed summarily to the trial thereof."

*Bhatia v. Johnston*, 818 F.2d 418, 421 (5th Cir. 1987) (quoting 9 U.S.C. § 4).

4

The Court must first determine whether, pursuant to section 4, the parties agreed to arbitrate the dispute in question. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (citation omitted). If the Court so finds, "[t]he second step is to determine 'whether legal constraints external to the parties' agreement foreclose[s] the arbitration of those claims.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

B.   Analysis

1.   Apex Has Not Waived the Right to Compel Arbitration

As an initial matter, the Court finds that Apex did not waive the right to compel arbitration by not pleading arbitration as an affirmative defense in its Answer [6]. "[A]rbitrability under the [FAA] is a matter of federal substantive law[,]" and federal law, not state law, informs the analysis of Dr. Barot's waiver argument. *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986) (citation omitted). "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Id.* "To invoke the judicial process '[t]he party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004) (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)).

Dr. Barot does not contend that Apex has "substantially invoke[d] the judicial process" or that he has been prejudiced by Apex's conduct in this litigation. Resp. in

Opp'n 8-9 [20].  Nor does the record contain any indication that Apex has engaged in any "overt act . . . that evinces a desire to resolve [Dr. Barot's claims] through litigation rather than arbitration." *PAICO Receivables*, 383 F.3d at 344 (internal quotations and citation omitted).  The fact that Apex did not plead arbitration as an affirmative defense, standing alone, does not constitute sufficient grounds for finding that Apex has waived its right to compel arbitration.  *See, e.g.*, *Mapes v. Chevron USA Products Co., a Div. of Chevron U.S.A.*, 237 F. Supp. 2d 739, 745 (S.D. Tex. 2002) (rejecting argument that a party's failure to assert arbitration as an affirmative defense constituted a waiver of the right to seek arbitration) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1270 n.13 (2d ed. 2002)).

       2.    <u>The Parties Agreed to Arbitrate</u>

The question of whether the parties agreed to arbitrate involves two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006) (citation omitted).  The "strong federal policy favoring arbitration . . . does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal quotations and citation omitted).  That determination is controlled by state contract law.  *Webb*, 89 F.3d at 258 ("When deciding whether the

parties agreed to arbitrate the dispute in question, courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

    a.    <u>Choice of Law</u>

Because the validity of the arbitration provision is determined under state contract law, the Court must address the choice of law issue raised by Lafferty. "Federal courts sitting in diversity must apply the choice-of-law rules of the state in which they are located." *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 250 (5th Cir. 1994). "Generally, 'courts will give effect to an express agreement that the laws of a specified jurisdiction shall govern, particularly where some material element of the contract has a real relation to, or connection with, such jurisdiction.'" *Williamson Pounders Architects PC v. Tunica Cnty., Miss.*, 597 F.3d 292, 295 (5th Cir. 2010) (quoting *Miller v. Fannin*, 481 So. 2d 261, 262 (Miss. 1985)). "This general principle is 'respected in the absence of anything violating the public policy of the forum jurisdiction.'" *Id*.

Lafferty contends that the law of the State of New York applies based on the choice of law provision in the Agreement.  Mot. to Dismiss and Compel Arbitration 7 [14]; *see also* Customer Account Agreement ¶ 11 [1-2].  Without identifying any public policy of the State of Mississippi which may be violated by applying New York law, Dr. Barot and Apex appear to assume that Mississippi law applies.  *See* Resp. in Opp'n 2-9 [20]; Mem. in Supp. of Apex's Rebuttal 2-11 [24].  The Court finds that it need not resolve any apparent difference between the parties regarding

the choice of law issue because the arbitration provision is enforceable regardless of whether the law of New York or Mississippi is applied.

        b.    <u>There is a Valid Arbitration Agreement Between the Parties</u>

Dr. Barot acknowledges that in September 2010 he "enter[ed] into a Customer Account Agreement and Margin Agreement . . . with Lafferty and [Apex]." Compl. 4 [1].  Dr. Barot claims "the [A]greement [is] a contract of adhesion" which makes it "easier to prove" under Mississippi law that the arbitration provision is substantively unconscionable.  Resp. in Opp'n 5 [20].  Dr. Barot also appears to contend that the Agreement's "change-in-term clause" and purported lack of mutuality, when viewed in addition to the allegedly adhesive nature of the Agreement, render the arbitration provision substantively unconscionable.  *Id*. at 8.

        (i)    <u>Contract of Adhesion</u>

        (aa)    <u>Mississippi Law</u>

"Mississippi courts have recognized two types of unconscionability, procedural and substantive." *Trinity Mission of Clinton, LLC v. Barber*, 988 So. 2d 910, 920 (Miss. Ct. App. 2007) (citation omitted).  "Procedural unconscionability may be proved by showing 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties [or] a lack of opportunity to study the contract and inquire about [its] terms.'" *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 716 (Miss. 2002) (citation omitted).  "Substantive unconscionability is present when there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement

or left without a remedy for another party's nonperformance or breach." *Barber*,

988 So. 2d at 922 (citation omitted).  The fact that a contract is one of adhesion may

support a finding that an arbitration provision within that contract is procedurally

or substantively unconscionable.[5]  *See Taylor*, 826 So. 2d at 716.

With respect to procedural unconscionability, even assuming the Agreement

is considered a contract of adhesion under Mississippi law, the Agreement and

arbitration provision are not rendered procedurally unconscionable.  A contract of

adhesion is usually a pre-printed agreement containing provisions in extremely

small print which are "drafted unilaterally by the dominant party and then

presented on a 'take-it-or-leave-it' basis to the weaker party who has no real

opportunity to bargain about its terms." *Cleveland v. Mann*, 942 So. 2d 108, 116

(Miss. 2006) (internal quotations and citation omitted).

> The fact that an arbitration agreement is included in a contract of
> adhesion renders the agreement procedurally unconscionable only
> where the stronger party's terms are unnegotiable and "the weaker
> party is prevented by market factors, timing or other pressures from
> being able to contract with another party on more favorable terms or to
> refrain from contracting at all."

*Taylor*, 826 So. 2d 716 (quoting *Entergy Mississippi, Inc. v. Burdette Gin Co.*, 726

So. 2d 1202, 1207 (Miss. 1998)).

---

[5] To the extent Dr. Barot seeks to establish that the Agreement was substantively unconscionable under Mississippi law, Dr. Barot acknowledges that finding a contract to be one of adhesion, without more, will not establish that the contract is substantively unconscionable. Resp. in Opp'n 5 [20]; *see also Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 701 (Miss. 2009) ("[F]inding a contract to be one of adhesion does not automatically mean that the contract or any provision thereof is substantively unconscionable.") (citation omitted). Dr. Barot's reliance on the "change-in-term clause" and alleged lack of mutuality will be addressed *infra* at parts II.B.2.b.(ii) and (iii).

Dr. Barot claims that the Agreement was one of adhesion because the Agreement was on "a pre-printed standard form[,]" he had "no opportunity to challenge the boiler point [*sic*] terms and conditions," and that "he was not allowed to negotiate anything." Resp. in Opp'n 5 [20]. Dr. Barot makes no contention that he was "prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms . . . ." Dr. Barot does not assert that he was not able to, or was otherwise prevented from, simply "refrain[ing] from contracting at all." Nor would anything in the record support either position. The Court thus finds that even if the Agreement was considered as being a contract of adhesion, Dr. Barot has not established that the arbitration provision was procedurally unconscionable.

(bb)   <u>New York Law</u>

The Court is further of the opinion that the Agreement is not a contract of adhesion under New York law. "A contract of adhesion contains terms that are unfair and nonnegotiable and arises from a disparity of bargaining power or oppressive tactics . . . ." *David v. #1 Mktg. Serv., Inc.*, 979 N.Y.S.2d 375, 378 (N.Y. App. Div. 2014) (internal marks and citation omitted). When evaluating whether a contract is one of adhesion, the sophistication of the parties may be considered. *See Morris v. Snappy Car Rental, Inc.*, 637 N.E.2d 253, 256-57 (N.Y. 1994)). "In addition, it must be shown that the contract inflicts substantive unfairness on the weaker party . . . ." *Ball v. SFX Broadcasting Inc.*, 665 N.Y.S.2d 444, 446-47 (N.Y. App. Div. 1997) (citations omitted). The mere fact an agreement can be considered

10

a "form contract" does not render the agreement one of adhesion.  *Rosenfeld v. Port Auth. of New York & New Jersey*, 108 F. Supp. 2d 156, 164 (E.D. N.Y. 2000) (applying New York law).

Dr. Barot does not argue and the record does not indicate that the Agreement's arbitration provision was unfair, that there existed any disparity in bargaining power between Dr. Barot and Lafferty, or that the Agreement resulted from oppressive tactics on the part of Lafferty.  Dr. Barot's primary contention is that the Agreement was nonnegotiable because it was "drafted unilaterally and presented to [him] on a take-it-or-leave-it basis[] . . . ."  Resp. in Opp'n 5 [20].

That the Agreement may not have been negotiable does not render the Agreement a contract of adhesion under New York law.  *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 572-73 (N.Y. App. Div. 1998) (reasoning that arbitration provision in form contract for sale of computer was not an unenforceable adhesion contract simply because arbitration provision "involved no choice or negotiation on the part of the consumer [and] was a 'take it or leave it' proposition" where consumer had the option of rejecting the contract and purchasing a computer elsewhere).  Dr. Barot does not claim he could not have rejected the Agreement.  Nor does Dr. Barot claim that he could not have contracted with another company for the performance of investment services.  In sum, Dr. Barot has not offered sufficient proof that the Agreement constitutes a contract of adhesion under New York law.  *See, e.g.*, *Snappy Car Rental*, 637 N.E.2d at 256-57 (rejecting argument that rental car agreement was rendered a contract of adhesion by an indemnity

provision because the plaintiff signed the agreement immediately beneath an affirmation that she read and agreed to be bound by the agreement's terms, she did not allege she was "the victim of deceptive or high pressure tactics[,]" and "nothing in the record indicate[d] that [the] plaintiff, a high school graduate who attended college, was prevented from reading the agreement or asking that its contents be explained"); *Ball*, 665 N.Y.S.2d at 446-47 (finding arbitration provision did not amount to "an adhesion contract that should be invalidated" where plaintiff seeking to invalidate provision was "a college graduate[,]" the provision was "written in plain English[,]" and there was no evidence of substantive unfairness because the plaintiff was "not precluded from pursuing her claims and obtaining full compensation for her damages in the arbitral forum").

      (ii)    <u>Lafferty's Right to Amend the Agreement</u>

The Agreement provides that it "may be amended upon written notice from [Lafferty]." Dr. Barot claims that this provision leaves him "irretrievably bound and at Lafferty's mercy" because the Agreement attempts to bind Lafferty's customers to arbitrate claims against Lafferty while simultaneously allowing Lafferty "to modify, rescind, or supplement" the Agreement's provisions. Resp. in Opp'n 6 [20]. Without citation to Mississippi or New York authority, Dr. Barot argues that the Court "should recognize" such "one-sided 'promises' . . . as the clever subterfuges they are and deem them unconscionable and unenforceable" because "the 'promise' by Lafferty to arbitrate is" illusory. *Id.*

It does not follow that if the "change in terms" provision is void under Mississippi or New York law, the arbitration provision itself must also be void. "Mississippi case law . . . holds that if a court strikes a portion of an agreement as being void, the remainder of the contract is binding." *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 725 (Miss. 2002).[6] The "change-in-terms" provision to which Dr. Barot refers is found in a paragraph separate from the arbitration provision and refers to the Agreement as a whole. *See* Margin Agreement ¶¶ 11 and 15; Customer Account Agreement ¶ 9 [1-2]. Thus, even if the Court were to "strike [the] portion" of the Agreement permitting a change-in-terms, "the remainder of the contract [would be] binding" under either Mississippi or New York law. *Russell*, 826 So. 2d at 725; *Schreiber*, 879 N.E.2d at 739. Dr. Barot has not established that the change in terms provision renders "the arbitration provision . . . unenforceable . . . ." Resp. in Opp'n 8 [20]. *Cf. Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174 n.18 (5th Cir. 2004) (applying similar principle under Louisiana law and noting that if a party could show that an amendment was "unconscionable or otherwise unenforceable . . . it would not mean that the original agreement never bound the company to anything").

---

[6] The same principle obtains under New York law. *Schreiber v. K-Sea Transp. Corp.*, 879 N.E.2d 733, 739 (N.Y. 2007) (finding that provision of arbitration agreement which would preclude a party from vindicating its rights in arbitration was unenforceable but rather than concluding that the unenforceable provision rendered entire arbitration agreement unenforceable, the court held that the offending provision should be disregarded while the remainder of arbitration agreement could be enforced).

(iii)   <u>Mutuality of Obligation</u>

Dr. Barot contends the arbitration provision in the Agreement lacks mutuality of obligation such that it is unconscionable because the arbitration provision only obligates Dr. Barot to submit his claims to arbitration "and not Lafferty[] . . . ." This argument is unpersuasive.  Resp. in Opp'n 8 [20]. "[M]utuality of obligation is not required for an arbitration agreement to be enforceable as long as there is consideration."  *McKenzie Check Advance of Mississippi, LLC v. Hardy*, 866 So. 2d 446, 453 (Miss. 2004).[7]  Dr. Barot makes no contention that the Agreement lacks consideration, and the record would not support such a claim.

Even if a lack of mutuality of obligation gave rise to unconscionability, the Agreement's arbitration provision is not lacking in mutuality of obligation.  The arbitration provision states that

> [a]ll parties to [the Agreement] are giving up the right to sue each other in court, including the right to a trial by jury . . . [and that] any and all controversies that may arise between or among [Dr. Barot], [Lafferty], and/or [Apex] . . . including, but not limited to, those arising out of or relating to transactions contemplated hereby, the account established hereunder, any activity or claim related to the Account, or the construction, performance, or breach of this or any other agreement . . . .

Customer Account Agreement ¶ 9 [1-2].  Because the arbitration provision relates to "[a]ll parties" and covers "any and all controversies[,]" there is mutuality of obligation to arbitrate.  *See Shelley v. Coldwell Banker Real Estate Corp.*, No.

---

[7] The same is true under New York law. "Mutuality of remedy is not required in arbitration contracts[,]" and the fact that "there is consideration for the entire agreement" is sufficient to "support[] the arbitration option . . . ."  *Sablosky v. Edward S. Gordon Co., Inc.*, 535 N.E.2d 643, 646 (N.Y. 1989).

4:05cv167-MPM-SAA, 2006 WL 1313825, at *1 (N.D. Miss. May 11, 2006) (finding
that mutuality of obligation was not lacking because arbitration provision applied to
"all claims, counter-claims, disputes, legal controversies, and other matters in
question arising out of, or relating to" the underlying agreement between the
parties).  The Mississippi cases Dr. Barot cites contain distinguishable arbitration
provisions and do not lead to a contrary conclusion.  *See Estate of Moulds*, 14 So. 3d
at 706 (refusing to enforce arbitration agreement because it required disputes to be
administered in a forum which had expressly refused to arbitrate disputes without
a post-dispute agreement[,]" and the parties did not have a post-dispute agreement);
*Pitts v. Watkins*, 905 So. 2d 553, 555-56 (Miss. 2005) (finding arbitration provision
in home inspection contract unconscionable because phrase exempting from
arbitration disputes over the homeowner's failure to pay fee permitted inspector "to
pursue a breach by [the homeowners] in a court of law, while [the homeowners
were] required to arbitrate any alleged breach by" inspector).  In sum, the Court
finds that the Agreement's arbitration provision is not unconscionable and is thus
enforceable.

    b.   <u>The Dispute in Question Falls Within the Scope of the Parties'
Arbitration Agreement</u>

Dr. Barot does not appear to argue that his claims do not fall within the scope
of the Agreement's arbitration provision, and the Court finds that Dr. Barot's claims
fall within the scope of the provision.  Customer Account Agreement ¶ 9 [1-2].  Dr.
Barot advances claims for breach of fiduciary duty, violations of the Securities Act,
fraud, misrepresentation, negligence, breach of contract, breach of the duty of good

15

faith and fair dealing, conversion, embezzlement, conspiracy, and negligent and intentional infliction of emotional distress.  Compl. 1-10 [1].  Dr. Barot specifically predicates these claims on his "investment broker/dealer relationship with" Lafferty and Apex, which relationship was created and is governed by the Agreement.  *Id.*  The Agreement's arbitration provision requires arbitration of "any and all controversies that may arise between or among" Dr. Barot, Lafferty, or Apex.

The Fifth Circuit Court of Appeals has referred to an arbitration provision requiring arbitration of "[a]ny controversy or claim arising out of or relating to this [a]greement" as being a "broad arbitration clause[] capable of expansive reach." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (citations and internal marks omitted).  "[A]rbitration provisions containing the language 'related to' are broad clauses that are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes having a significant relationship to the contract regardless of the label attached to the dispute."  *Hamel-Schwulst v. Country Place Mortg. Ltd.*, 406 F. App'x 906, 913 (5th Cir. 2010) (quoting *Pennzoil*, 139 F.3d at 1067) (internal quotations omitted).

The Agreement requires arbitration of "any and all controversies that may arise between or among" Dr. Barot, Lafferty, or Apex "including, but not limited to, those arising out of or relating to transactions contemplated" in the Agreement, the account established pursuant to the Agreement, and "any activity or claim related to the Account, or the construction, performance, or breach of this or any other agreement . . . ."  Customer Account Agreement ¶ 9 [1-2].  The Court finds that the

16

claims Dr. Barot advances are within the scope of this language, and those claims must be submitted to arbitration. *See, e.g.*, *Pac. Life Ins. Co. v. Heath*, 370 F. Supp. 2d 539, 544 (S.D. Miss. 2005) (finding that provision requiring arbitration of "any controversy" included within its scope "claims of constructive fraud, breach of fiduciary duty, negligence, intentional act, gross negligence, breach of the implied covenant of good faith and fair dealings, alter-ego, . . . excessive activity or churning, failure to supervise, and civil conspiracy"); *Arce v. Cotton Club of Greenville, Inc.*, 883 F. Supp. 117, 119 (N.D. Miss. 1995) (finding that claims of "breach of the employment contract, breach of implied covenant of good faith, breach of the severance agreement, and fraudulent inducement" fall within the scope of an arbitration provision extending to "[a]ny controversy or claim arising out of or relating to [the parties' agreement] or the breach thereof").

      c.   <u>There is No Evidence of Any Legal Constraints Which Would Preclude Arbitration</u>

Dr. Barot has not shown that the Agreement is procedurally or substantively unconscionable.  Having not alleged the existence of any other potential legal constraints, Dr. Barot has not established a legal constraint which would preclude arbitration of his claims. Therefore, Lafferty's Motion to Compel should be granted. Because the Court finds that each of Dr. Barot's claims fall within the scope of the arbitration provision and should be submitted to arbitration, this case should be dismissed with prejudice.  *See, e.g.*, *Ilva (USA), Inc. v. Alexander's Daring M/V*, 10 F.3d 255, 256 (5th Cir. 1993).

### III. CONCLUSION

**IT IS**, **THEREFORE**, **ORDERED AND ADJUDGED** that Defendants R.F. Lafferty & Co., Inc., and Todd Sherman's Motion to Dismiss and to Compel Arbitration [13] is **GRANTED**, and the parties in this action are to submit the disputed matters to arbitration.

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 13th day of February, 2015.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE